UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEAN PARAISON,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:20-cv-03379-JPB |

## ORDER

This matter is before the Court on Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion to Dismiss. ECF No. 8. After due consideration, the Court finds as follows:

### I.   BACKGROUND

Plaintiff Jean Paraison ("Paraison") filed a complaint for breach of contract, discrimination and specific performance in connection with a real estate transaction to purchase Nationstar's real property located in Milledgeville, Georgia ("Subject Property").

The Complaint alleges that Paraison is an African American man who was the successful bidder at a May 21, 2020 auction for the sale of the Subject Property. Paraison paid the requisite earnest money deposit in the amount of $10,552.50, and closing was set for July 9, 2020.

Paraison asserts, however, that Nationstar's real estate agent thereafter called to encourage Paraison to relinquish the property, including asking him to "'back out of the deal'" and telling him that the property was in "'bad condition'" and that he would "'lose his money'" if he moved forward. Compl. ¶ 9.

According to the Complaint, the purchase agreement governing the transaction ("Purchase Agreement" or "Agreement") did not contain the preliminary title report as required, and the closing company failed to provide a copy of the report upon Paraison's request. Paraison also claims that the closing company refused to remove a title exception from the Subject Property's title. Nationstar thereafter attempted to terminate the Purchase Agreement.

The following are relevant excerpts of the Purchase Agreement:[1]

- **Available Remedies**

    Notwithstanding any provision to the contrary in this Agreement, Seller's liability and Buyer's sole and exclusive remedy in all circumstances and for all claims . . . in connection with this Agreement shall be limited to no more than:   (A) A return of Buyer's earnest money deposit . . . if the sale to Buyer does not close . . . .

---

[1] The Court may properly consider the Purchase Agreement because it is attached as an exhibit to the Complaint.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("Under the Federal Rules of Civil Procedure, . . . exhibits are part of the pleading 'for all purposes.'").

2

> Purchase Agreement 1, ECF No. 1-1 (emphasis removed).[2]
>
> Buyer further waives the following, to the fullest extent permissible by applicable law:  (A) All rights to file and maintain an action against Seller for specific performance . . . .

*Id.* 2 (emphasis removed).

- **Title Insurance Requirements**

> The Escrow/Closing Agent is instructed to close the transaction contemplated by this Agreement on the Closing Date, subject to each of the following:  (1) If the Title Company . . . is unable, or unwilling, to issue an Owner's Policy of Title Insurance (the "Owner's Policy") or a Mortgagee's Policy of Title Insurance (the "Loan Policy["]) to Buyer, as required in this Agreement, at or prior to the Closing Date, then the Escrow shall not close. In the event that the Escrow does not close as a result of an aforementioned lack of an Owner's Policy or Loan Policy, Seller may terminate this Agreement with no further liability, obligation or responsibility to Buyer . . . .

*Id.* § 6(B)(1) (emphasis removed).

> Closing is further subject to each of the following conditions precedent[:] . . . (4) the Title Insurance Company . . . shall have irrevocably committed to issue to Buyer an Owner's Policy showing coverage in the amount of the Purchase Price and showing insurable title to the Property . . . .

*Id.* § 6(C).

- **Seller's Deliveries**

> Prior to Closing, Seller shall deposit with the Escrow/Closing Agent . . . (i) a Deed transferring Seller's interest in the Property to Buyer,

---

[2] The Court cites to the page number of the Agreement where a section or paragraph number is not available.

executed by Seller and acknowledged pursuant to Georgia law, and (ii) a Non-Foreign Transferor Declaration executed by Seller . . . .

*Id*. § 6(F)(1).

- **Seller's Termination**

Seller shall have the right, at Seller's sole discretion . . . to terminate the Agreement if: . . . (ii) Seller determines that it is unable or it is economically not feasible to convey title to the Property insurable by a reputable title insurance company at regular rates . . . .

*Id*. § 6(G)(3).

- **Preliminary Title Report**

Buyer acknowledges and agrees that prior to Closing, Buyer will have obtained, read and approved copies of (1) a preliminary title report or commitment for the Property . . . and (3) any and all other matters disclosed in the preliminary title report or commitment delivered from the Title Company to Buyer.

*Id*. § 8(F).

- **Conveyance of Title**

Seller shall be under no obligation to (A) remove any title exception, (B) bring any action or proceeding or bear any expense in order to enable Seller to convey title to the Property in accordance with this Agreement or (C) otherwise make the title to the Property insurable by the Title Company.

*Id*. § 10.

## II.   DISCUSSION

### A.   Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.  "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D.

Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

### B.   Analysis

#### 1.   Breach of Contract

The Complaint alleges that Nationstar is liable for breach of contract because it failed to (i) provide the title report needed to close the transaction; (ii) deliver marketable title for the Subject Property; and (iii) close the transaction.

In its Motion, Nationstar argues that Paraison's breach of contract claim should be dismissed because he has failed to show that the alleged failure to provide a title report was a default under the Purchase Agreement or that it can be attributed to Nationstar. Nationstar also contends that the Purchase Agreement expressly states that it is under no obligation to remove exceptions to the Subject

Property's title.  Finally, Nationstar points out that the Purchase Agreement affords it sole discretion to terminate the Agreement (i) if Nationstar is unable or finds it is not economically feasible for it to convey marketable title for the Subject Property and (ii) where the condition precedent of Paraison securing title insurance for the Subject Property is not met.

Paraison counters that the delay in providing the title report was a breach of contract because the Purchase Agreement "contemplate[d]" that Paraison would receive a copy of the title report with the Purchase Agreement.[3]  Paraison further explains that the delay limited his ability to address the title issue by the applicable deadline.  Paraison also contends that Nationstar's failure to remove the title exception was a breach of the Agreement.

"The elements for a breach of contract claim in Georgia are the breach, which must be more than de minimis, and the resultant damages to the party having the right to complain about the contract being broken."[4]  *TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009).  But in order to determine

---

[3] Although the Complaint asserts that the title report was not provided, Paraison argues in his brief only that there was a delay in receiving the title report.
[4] The Purchase Agreement provides that Georgia law governs the construction of its terms.

whether Paraison has adequately alleged a breach of contract, the Court must first construe the terms of the contract.

Construction of a contract requires three steps:

First, the trial court must decide whether the language is clear and unambiguous. If it is, no construction is required, and the court simply enforces the contract according to its clear terms. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Envision Printing, LLC v. Evans*, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016) (quoting *General Steel v. Delta Bldg. Sys.*, 676 S.E.2d 451, 453 (Ga. Ct. App. 2009)).

With respect to the first step, "[t]he court [initially] looks to the four corners of the agreement to ascertain the meaning of the contract from the language employed." *Brogdon v. Pro Futures Bridge Cap. Fund, L.P.*, 580 S.E.2d 303, 306 (Ga. Ct. App. 2003). In that analysis, "[w]ords generally [are ascribed] their usual and common signification."[5] O.C.G.A. § 13-2-2(2). "[W]here the language of [the] contract is clear, unambiguous, and capable of only one reasonable

---

[5] *See also King v. GenOn Energy Holdings, Inc.*, 747 S.E.2d 15, 17 (Ga. Ct. App. 2013) (stating that "the usual and common meaning of a word may be supplied by common dictionaries").

interpretation, no construction is necessary or even permissible by the trial court." *Ainsworth v. Perreault*, 563 S.E.2d 135, 140–41 (Ga. Ct. App. 2002). *See also Triple Eagle Assocs., Inc. v. PBK, Inc.*, 704 S.E.2d 189, 195–96 (Ga. Ct. App. 2010) (stating that "where the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity") (internal punctuation omitted).

Here, the Court finds that the language of the Agreement is unambiguous. Paraison does not argue otherwise. Therefore, the Court will analyze the Agreement according to its express terms.

As to Paraison's argument that Nationstar breached the Agreement by failing to provide the title report in a timely manner, the Court finds that such contention is not supported by the Agreement.[6] Neither the section of the Agreement regarding the seller's deliveries nor any other provision specifies that

---

[6] "[W]hen . . . exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). *See also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.") (internal citation omitted).

Nationstar was required to provide the title report, much less by a specific time. Section 8(F) and Exhibit "A" of the Agreement, which Paraison cites in support of his argument that the Agreement "contemplate[d]" that he would receive a copy of the title report with the Purchase Agreement, do not support a breach of contract claim. Section 8(F) provides only that the buyer agrees to obtain, read and approve the preliminary title report prior to closing, and Exhibit "A" of the Agreement actually directs the parties to "[c]ontact the Closing Company" for a copy of the title report. Therefore, Paraison has failed to state a plausible claim for breach of the Agreement with respect to the provision of the title report.

Likewise, Paraison has not plausibly alleged that Nationstar breached the Agreement by failing to remove the title exception. The Agreement expressly states that Nationstar "shall be under no obligation to . . . remove any title exception." Purchase Agreement § 10. As such, there is no basis upon which to allege a breach of contract claim for failing to remove the title exception.

Finally, Paraison has not plausibly alleged that Nationstar breached the Agreement by failing to close the transaction. The Agreement provides that Nationstar, at its "sole discretion," has the right to terminate the Agreement if "it is unable or it is economically not feasible to convey [marketable] title." *Id*. § 6(G)(3). This provision establishes that Nationstar was authorized to terminate the

Agreement where, as here, it was unable, or it elected not to address the title exception.  Accordingly, there can be no plausible allegation of breach of contract if Nationstar did what the Agreement permitted it to do.

### 2. Violation of the Federal and Georgia Fair Housing Act

Paraison alleges that Nationstar discriminated against him in violation of the federal Fair Housing Act ("FHA") and the Georgia Fair Housing Act ("GFHA").  However, this count of the Complaint alleges only that Nationstar treated Paraison "with hostility, discriminating against [him] and failing to allow him to close on the Subject Property" because "he is an African American male and he has an accent."  Compl. ¶ 36.  This conclusion appears based on allegations elsewhere in the Complaint that Nationstar's real estate agent called to encourage Paraison to relinquish the property and told Paraison that he would lose money if he moved forward with the transaction.

In Nationstar's view, the comments attributed to its real estate agent do not imply a racial bias, and the Complaint does not allege any facts that could be construed as supporting a claim for discrimination.

Paraison responds that Nationstar's real estate agent, "whose job it is to sell the Subject Property, would have no other reasonable reason to try to deter [Paraison] from purchasing the Subject Property."  Pl.'s Resp. Br. 7, ECF No. 15.

11

The Court finds that the Complaint's conclusory allegations regarding discrimination do not meet *Twombly's* pleading standard or otherwise demonstrate a right to relief above the speculative level. In other words, Paraison's allegations regarding this claim fall short because they constitute "naked assertions devoid of further factual enhancement," *Ashcroft*, 556 U.S. at 678, and there is simply no basis upon which the Court can draw a reasonable inference of discrimination, *see Traylor*, 491 F. App'x at 990. *See also Hallmark Devs., Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1283–84 (11th Cir. 2006) (stating that a plaintiff must allege "'unequal treatment on the basis of race" and "'establish that race played some role'" in the challenged decision in order to prevail on a claim under the FHA) (citations omitted).

For these reasons, Paraison has not plausibly alleged discrimination under either the FHA or the GFHA.[7]

---

[7] "The Georgia Fair Housing Act . . . is nearly identical to the Federal Fair Housing Act" and is analyzed in the same way. *Bailey v. Stonecrest Condo. Ass'n, Inc.*, 696 S.E.2d 462, 466 (Ga. Ct. App. 2010). *See also Lowman v. Platinum Prop. Mgmt. Servs., Inc.*, 166 F. Supp. 3d 1356, 1360 (N.D. Ga. 2016) (stating that "[c]laims arising under the Georgia FHA . . . are interpreted under the same standard as the Federal FHA").

### 3. Specific Performance

Paraison seeks a "decree," pursuant to the FHA, that directs Nationstar to convey marketable title for the Subject Property and close the transaction.

However, Nationstar maintains that the Purchase Agreement forecloses any action for specific performance and limits Paraison's recovery, if any, to the return of his earnest money deposit.

As an initial matter, the Court has already found that Paraison failed to state a claim under the FHA, so there is no basis for a specific performance decree under that act. In any event, Paraison did not respond to Nationstar's argument that the Agreement prohibits a claim for specific performance. Therefore, Paraison's claim for specific performance is waived. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (agreeing with the district court's conclusion that "when a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned" (alteration in original) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001))).

Accordingly, the Court finds that Paraison has failed to state a claim for specific performance.[8]

---

[8] Given this conclusion, the Court need not address the substance of Nationstar's argument that the Agreement bars a specific performance claim.

In all, the Court finds that the Complaint fails to state a claim upon which relief may be granted and therefore **GRANTS** Nationstar's Motion to Dismiss (ECF No. 8).[9]  The Complaint is dismissed, and the clerk is **DIRECTED** to close the case.

**SO ORDERED** this 1st day of September, 2021.

J. P. BOULEE
United States District Judge

---

[9] Since Paraison's attorneys' fees claim depends on the success of his substantive claims, and the Court has dismissed those claims, Paraison's attorneys' fees claim necessarily fails.